UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:11-CV-00055-JHM

GEORGE W. LEWIS and CYNTHIA  PLAINTIFFS
M. LEWIS, his wife, et al

v.

CERALVO HOLDINGS, LLC, et al  DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendants Ceralvo Holdings, LLC and Armstrong Coal Company, Inc.'s (hereinafter collectively as "the Armstrong defendants") motion for summary judgment. [DN 94]. Fully briefed, this matter is ripe for decision. For the reasons stated below, the motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART.**

I. BACKGROUND

Charley and Vela Harrell left two parcels of land in Ohio County to their five children in equal shares. Those five children entered into a lease agreement with Peabody Coal Company in 1977, with two pertinent provisions. Article I allows for mining of the no. 9 and no. 14 coal seams on Parcel 1, and mining of the no. 9 seam on Parcel 2. (Lease agreement [DN 67-2] at 6). The no. 14 seam on Parcel 1 was to be mined "by the strip method of mining only." (*Id.* at 5–6). Article III of the lease agreement permits Peabody to construct a haul road across the property to transport coal "from the demised or adjoining premises." (*Id.* at 7). All five of the Harrell children have passed away. Their heirs now own the two parcels and are the plaintiffs and

defendant/cross-claimants in this case, and they will be collectively referred to as the "claimants."[1]

At some point between the lease being entered into in 1977 and 1981, Peabody constructed the haul road across the claimant's property. The haul road was connected to other roads in Peabody's Ohio County haul road network. The parties dispute the exact use to which the haul road across the claimants' property was put; the Armstrong defendants assert that Peabody regularly used the road to haul coal that was mined from non-adjoining premises throughout the 1980s and 1990s, whereas the claimants deny this. None of the claimants have lived on the property at any time since the lease was executed, but individual claimants have visited the property with some regularity since at least the mid-1980s, with some even erecting a gate across the haul road in 2005 or 2006 to keep trespassers from using the road.

At some unspecified date, Peabody assigned the lease to Ceralvo, a holding company. Ceralvo then subleased the land to Armstrong Coal Company on February 9, 2011. However, Armstrong had already begun mining operations in the area in 2008, and it is undisputed by the parties that during this time, Armstrong transported coal from non-adjoining premises across the claimants' property in breach of Article III of the lease agreement. Further, it is undisputed that Armstrong exercised its right to mine the no. 14 coal seam on the claimants' property by the strip method and, in doing so, also mined the no. 15 seam, located sporadically above the no. 14 seam. Armstrong then cleaned the no. 15 coal, added it to coal with a lower sulfur content, and sold it, paying the claimants a royalty on the coal.

---

[1] The original claims against the defendants were asserted by one of the Harrell children, Ruth Lewis, and the heirs of only three of the other four Harrell children. (Pl.'s compl. [DN 1-1]). However, Ruth passed away during the pendency of this litigation, and her children were substituted in this action as heirs/personal representatives to her. [DN 13]. The plaintiffs then submitted an amended complaint that named the heirs of the omitted Harrell child as defendants in this case, making no claims against them. [DN 67]. These defendants asserted cross-claims against the Armstrong defendants that are identical to those that were asserted by the plaintiffs. [DN 83]. Therefore, no actual adversity exists between the plaintiffs and this set of defendants, allowing the Court to treat both groups of parties as one for the posturing of this case.

Upon their discovery of the Armstrong defendants' use of the haul road, the original plaintiffs filed this present action in Ohio Circuit Court [DN 1-1], and the Armstrong defendants removed the case to this Court. [DN 1]. Through the plaintiffs' third amended complaint [DN 67] and the defendant/cross-claimants' cross claim [DN 83], the claimants make two series of claims. The first series relates to the haul road. The claimants assert in Count I that Ceralvo breached the lease agreement by permitting the haul road to transport coal from non-adjoining premises, in Count II that Armstrong trespassed upon the haul road by doing the same, in Count III that both parties were unjustly enriched by these actions, and Count VII seeks injunctive relief to prevent the use of the haul road to haul coal from non-adjoining properties. The second series of claims relates to the mining of the no. 15 coal seam on Parcel 1. The claimants assert in Count IV that the Armstrong defendants trespassed by taking the no. 15 coal seam and selling it, in Count V that the Armstrong defendants converted the no. 15 coal seam by doing the same, in Count VI that punitive damages should be imposed on both parties, and Count VII seeks injunctive relief to prevent Defendants from mining the no. 15 coal seam. The Armstrong defendants have moved for summary judgment as to Counts I-VI.[2]

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the

---

[2] The Defendant has not moved for summary judgment on Count VII, the injunctive relief claim, but that claim will succeed only insofar as the related claims do. Also, Defendants have not moved for summary judgment on Count VIII which relates the alleged failure to pay adequate royalties on the coal that was mined and sold from the claimants' property, or Count IX which seeks to quiet title to the haul road in favor of the claimants.

moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. HAUL ROAD CLAIMS

In their motion for summary judgment, the Armstrong defendants do not dispute that coal was hauled across the claimants' property that was mined from non-adjoining lands, which was prohibited by the lease. (Def. Mot. Summ. J. [DN 94-1] at 11). However, they raise a defense of waiver by acquiescence, arguing that Peabody had done the same thing throughout the 1980s and 1990s and, because the claimants either knew of this activity by Peabody or should have known and failed to object at that time, they waived their present claims related to the haul road. Because the Armstrong defendants raise this as a defense to all three claims related to the haul road, the Court may address all three at once.

"Acquiescence consists of assent by words or conduct on which the other party relies." *Hazard Coal Corp. v. Ky. W. Va. Gas Co.,* 311 F.3d 733, 740 (6th Cir. 2002) (applying Kentucky law). To assert a defense of waiver by acquiescence, it must be shown that "a party with full knowledge, or at least with sufficient notice or means of knowledge, of his rights, and of all the material facts . . . acts in a manner inconsistent with its repudiation, or lies for a considerable time and knowingly permits the other party to deal with the subject matter . . ." *Id.* (internal citations omitted). If a party either "knew or should have known" of the breach but merely sat by and allowed it to occur, then that party may have been deemed to have waived their claims. *Id.* at 741. *See also Carter v. Tucker*, 266 S.W. 9, 11 (Ky. 1924) ("It is a well-settled principle that a partner in possession of all the facts, and who remains silent through a transaction, though, present, cannot thereafter retain the beneficial results of the transaction and at the same time renounce the balance of the transaction or contract which to him proves unsatisfactory.")

In this case, the Armstrong defendants argue that Peabody hauled coal from non-adjoining premises across the claimants' haul road on a regular basis throughout the 1980s and 1990s. They also argue that the claimants either had actual knowledge of this activity, or at the very least they should have known. The evidence used to demonstrate their alleged acquiescence is mostly circumstantial and contested by the claimants. The Armstrong defendants ask the Court to draw several inferences in its favor, but as the claimants correctly point out, all inferences are to be drawn in their favor at this stage. The Armstrong defendants point to the haul road permit applications as conclusive proof that claimants had actual knowledge of the breach. While the permit applications certainly constitute proof of notice, it is not conclusive proof. The Armstrong defendants simply have not shown the absence of a

5

genuine issue of fact on the issue of waiver by acquiescence to entitle them to summary judgment. Therefore, their motion for summary judgment as to counts I, II, and III is **DENIED**.

### B. NO. 15 COAL SEAM CLAIMS

As to the series of claims regarding the mining of the no. 15 coal seam,[3] the parties do not dispute any material facts: Armstrong mined the no. 14 coal seam by the strip method and, in the process, mined the no. 15 coal seam that sat above portions of the no. 14 seam and sold it. In its motion for summary judgment, the Armstrong defendants argue that they were permitted to do this with the no. 15 seam under the terms of the lease. Article III of the lease contains the following clause:

> Lessee, its successors or assigns, shall have the right to enter upon the premises hereinabove described for the purpose of drilling, testing and exploring for coal and for mining by the strip, underground or other mining process the vein or veins of coal as hereinabove stipulated and recited and to remove from the premises such coal as may be mined, together with the rights necessary, convenient and/or incidental to mining thereof, and to do any and all things necessary, convenient and/or incidental to the mining operation, including, but not limited to, the right to maintain portals, entries, air shafts, power lines (excluding grant or assignment by Lessee to Kentucky Utilities Company), roadways, silt basis, water impoundments, buildings, mine related structures of any kind or nature, and any other use incidental to the mining operation.

[DN 67-2, at 5–6]. The Armstrong defendants argue that this clause, giving them the right to do all things "necessary, convenient, and/or incidental" to the mining of the no. 14 seam, gave them a right to remove and dispose of the no. 15 seam. The lease required the no. 14 coal be mined by the strip method. This necessarily required all of the dirt, rock, and other minerals, including the no. 15 coal, to be removed and disposed of in order to get to the no. 14 coal. Environmental concerns would have required them to either remove the coal from the premises entirely or bury

---

[3] In their responses to the Armstrong defendants' motion for summary judgment, the claimants concede the claim for punitive damages. [DN 104, 105]. Therefore, only the trespass and conversion claims remain.

it beneath the water table. Instead of burying the coal, or wasting it in some other manner, the Armstrong defendants sold it and turned it into a profitable resource for both them and the claimants.

The Court agrees that the lease agreement permitted the Armstrong defendants to do this. Under Kentucky law, a "lease of minerals carries with it the right to use as much of the surface, or other property, as may be reasonably necessary to exploit the minerals." *Wiser Oil Co. v. Conley*, 346 S.W.2d 718, 721 (Ky. 1960). Further, in *McIntire v. Marian Coal Co.*, 227 S.W. 298, 299 (Ky. 1921), a grant of mineral rights allowed the mining company to do whatever was "necessary or convenient" in the performance of the contract, similar to the lease in this case. The court noted that the grant "could hardly be broader or more sweeping in favor of" the mining company. *Id. See also Case v. Elk Horn Coal Corp.*, 276 S.W. 573, 574 (Ky. 1925) ("Clearly the [mining company] has the paramount right to the use of the surface in the prosecution of its business for any purpose of necessity or convenience, and of this it is to be the judge, and unless it exercise this power oppressively, arbitrarily, wantonly, or maliciously, plaintiff cannot complain"). Thus, the Armstrong defendants were within their rights to sell the coal as opposed to wasting it. And because the lease permitted this, the claimants' claims of trespass and conversion must fail, as Armstrong had a right to possess the no. 15 seam. Therefore, the motion for summary judgment as to Counts IV, V, and VI is **GRANTED**.

## V. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

7

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

October 26, 2016

cc: counsel of record